FILED

February 18, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 7:54 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| BENJAMIN HEATH MULL, <br>     **Employee,** <br> **v.** <br> **HENKELS & MCCOY,** <br>     **Employer,** <br> **And** <br> **ZURICH NORTH AMERICA** <br>     **Insurance Carrier.** | **Docket No.: 2015187845** <br><br> **State File Number: 59345 2015** <br><br> **Judge Audrey A. Headrick** |

---

## EXPEDITED HEARING ORDER
## GRANTING TEMPORARY DISABILITY AND MEDICAL BENEFITS
## (REVIEW OF THE FILE)

---

This claim came before the Court upon a Request for Expedited Hearing filed by the employee, Brian Heath Mull. Mr. Mull requested a review of the file for determination of his entitlement to medical and temporary disability benefits. The central legal issue is whether the evidence is sufficient for the Court to determine that Mr. Mull is likely to prevail at a hearing on the merits. Based upon the record at this time, the Court finds Mr. Mull is likely to prevail at a Compensation Hearing and grants his request for temporary disability and medical benefits.[1]

### History of the Claim

Mr. Mull is a thirty-nine-year-old resident of Soddy-Daisy, Hamilton County, Tennessee. (T.R. 1.) Mr. Mull is employed by Henkels & McCoy as a journeyman wireman. *Id.*

In Mr. Mull's Sworn Statement, he testified he sustained an injury on January 24, 2015, while working for Henkels & McCoy in Wartrace, Tennessee. (Ex. 2 at 6:9-16, Nov. 11, 2015.) Mr. Mull and his crew needed to get the OPGW off a lace steel structure, bring it down to the ground, and prep it for splicing.[2] *Id.* at 6:15-25; 7:1-16; 9:21-25. He was in a bucket no more than thirty feet in the air. *Id.* at 10:1-2. Mr. Mull

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

[2] OPGW as defined by Mr. Mull is fiber optic cable that is inside a stainless steel cable. *Id.*

1

picked up the service coil of OPGW and set it on the side of the bucket to take it down to the ground. *Id.* at 7:21-25; 8:1. The coil weighed approximately 100 pounds. *Id.* at 8:4-9. Mr. Mull testified he felt what he described as a "twinge" in his lower right back. *Id.* at 8:2-3.

When Mr. Mull felt the twinge in his back, he stated he yelled to his foremen as soon as he felt it while he was still up in the bucket. *Id.* at 10:10-20. He recalled he said, "Man, I think I pulled something in my back." *Id.* at 10:18-20. Mr. Mull's crew consisted of Ken Cox, the foreman, Teddy Holland, the general foreman, and Tim Hartselle, a co-worker. *Id.* at 9:9-20. After he was back down on the ground, Mr. Mull further stated his crew asked if he was okay, but there was no further discussion. *Id.* at 10:21-25. Mr. Mull testified he worked the remainder of the day.

Mr. Mull first sought medical treatment on January 28, 2015. *Id.* at 13:23-25. He recalled, "I woke up that morning and couldn't move and called my foreman. He called me back and sent me to Watts Bar Nuclear Plant to see the plant nurse."[3] *Id.* at 14:1-6. Mr. Mull stated he saw the plant nurse and told her how he was injured. *Id.* at 14:7-14. He did not sign any reports or complete an accident report, and the nurse did not give him any form showing he saw her. *Id.* at 14:15-21. The nurse told Mr. Mull he had a back strain and gave him Advil. *Id.* at 14:24-25; 15:1-1.

On March 23, 2015, Mr. Mull sought treatment at East Town Urgent Care & Occupational Health. (Ex. 3.) Mr. Mull testified he went there because, over time, the pain started moving down into his thigh area. (Ex. 2 at 16:20-24; 18:20-25; 19:1-7, Nov. 11, 2015.) He stated he had consistent right lower back pain between January 28, 2015, and March 23, 2015. *Id.* at 16:25; 17:1-5. Mr. Mull stated he did not tell anyone his condition was getting worse. *Id.* at 17:12-18.

The East Town Urgent Care record reflects that Mr. Mull presented with low back and leg pain. (Ex. 3.) In the "History of Present Illness" section, Mr. Mull gave an onset date of "three weeks ago." *Id.* He also stated his mid-to-low-back pain went down both legs. *Id.* The medical provider noted Mr. Mull "pulled right gluteal area about 6 weeks ago but healed well." *Id.* The medical provider diagnosed Mr. Mull with sciatica and prescribed Clyclobenzapine HCI and Prednisone.[4] *Id.* Mr. Mull used his personal insurance for the office visit.

On June 6, 2015, Mr. Mull sought treatment at Physicians Care. (Ex. 4.) Mr. Mull stated he told Murrell England, the new crew foreman, that he was going to the doctor because of his back. *Id.* at 17:12-22; 22:7-14; 22:17-19. At Physicians Care, Mr.

---

[3] Mr. Mull was a staff augment for TVA through Henkels & McCoy. *Id.* at 39:12-24. Although he stated Steve Griffin was a Henkels & McCoy employee, the rest of the people on his crew were TVA employees. *Id.* at 39:11-24.

[4] Clyclobenzapine HCI is a muscle relaxant. Rxlist.com. http://rxlist.com. (last visited Feb. 10, 2016).

Mull complained of right-thigh pain that began "3 months ago." (Ex. 4.) The physician diagnosed Mr. Mull with back pain and a "[d]isplaced lumbar invert disc." *Id.* Mr. Mull received an injection, prescriptions for a steroid dose-pack, and a muscle relaxant. *Id.* The physician also ordered a lumbar MRI. *Id.* Mr. Mull used his personal insurance for the office visit.

On June 19, 2015, Mr. Mull sought treatment with Dr. Jason Eck. (Ex. 5.) He reported pain and weakness down his right leg for the past three months. *Id.* Mr. Mull gave a history of lifting "a 75 lb. cable roll and had immediate pain which has gotten worse." *Id.* After reviewing the lumbar MRI, Dr. Eck diagnosed a large right L5-S1 herniated nucleus pulpous and radiculopathy. *Id.* In addition to ordering physical therapy, Dr. Eck discussed the possibility of a right L5-S1 epidural steroid injection and a microdiscectomy. *Id.* Mr. Mull used his personal insurance for his treatment with Dr. Eck.

Mr. Mull testified he told Teddy Holland, his general foreman, on June 29, 2015, he had a herniated disc. (Ex. 2 at 36:13-25.) He stated Mr. Holland called Murrell England, Mr. Mull's foreman, and told him Mr. Mull needed to report to UT Family Medical. (Ex. 2 at 37:4-12.) The TVA Request for Medical Evaluation Form indicates that it wanted UT Family Medical to perform a fitness for duty examination of Mr. Mull for a non-work-related injury. (Ex. 6.)

Mr. Mull saw Dr. Stephen Adams at UT Family Medical on June 29, 2015, where he gave a history of picking up a coil of cable while in a bucket injuring his low back in January 2015. *Id.* Mr. Mull provided Dr. Adams with a consistent history of medical treatment he had received up to that point. *Id.* Dr. Adams placed Mr. Mull on restricted duty and instructed him to return on August 3, 2015. *Id.* The records do not reflect whether Mr. Mull returned to UT Family Medical for further evaluation or treatment.

On July 13, 2015, Mr. Mull saw Dr. Jay E. Jolley, II for a second opinion. (Ex. 7; Ex. 2 at 31:25; 32:1-18.) He presented with complaints of back and left-leg pain, beginning on January 24, 2015, due to an injury. *Id.* Dr. Jolley performed x-rays, reviewed the lumbar MRI, and examined Mr. Mull. *Id.* His diagnoses were identical to Dr. Eck's. *Id.* Dr. Jolley discussed the options of medication, LESIs, and surgery with Mr. Mull.[5] *Id.* Mr. Mull testified that Dr. Jolley recommended a microdiscectomy. (Ex. 2 at 33:9-15.)

Mr. Mull testified he worked restricted duty from June 29, 2015, through July 16, 2015, at different TVA sites. (Ex. 2 at 2:20-25; 11:5-6; 12:18-20.) During that time, Mr. Mull had an LESI performed by Dr. Eck. (Ex. 5.) On July 16, 2015, Mr. Mull stated a TVA manager called him and terminated him. *Id* at 12:18-25. Although Mr. Mull

---

[5] "LESI" is the acronym for lumbar epidural steroid injection.

believed TVA terminated him because of his back injury, the termination sheet stated, "no longer needed." *Id*. at 13:1-12.

On July 16, 2015, Mr. Mull testified he contacted Henkels & McCoy following his release from TVA. (Ex. 2 at 39:25; 40:1-4). Henkels & McCoy did not have work for him. *Id*. at 13:13-16. On July 20, 2015, Mr. Mull went to Henkels & McCoy's office and discussed his back injury, and there "was a battle there for a few days as to is this [claim] TVA or is it Henkels & McCoy." *Id*. at 40:5-19. Mr. Mull stated "they finally figured out [the claim] was Henkels & McCoy." *Id*. at 19-20. He testified he did not work for anyone other than Henkels & McCoy from January 24, 2015, forward. *Id*. at 40:21-25; 41:1-7.

On August 3, 2015, Mr. Mull selected Dr. Scott Hodges from a panel of physicians. (Ex. 8.) Dr. Hodges did not evaluate or treat Mr. Mull. There is a dispute between the parties as to the reason. Mr. Mull contends Henkels & McCoy did not schedule an appointment with Dr. Hodges. (T.R. 9.) Henkels & McCoy contends Mr. Mull "returned to Dr. Eck for treatment rather than seeing Dr. Scott Hodges." (T.R. 8.)

On September 2, 2015, Mr. Mull followed-up with Dr. Eck. (Ex. 5.) Mr. Mull chose to undergo surgery. *Id*. At that visit, Dr. Eck placed Mr. Mull completely off work. *Id*. Dr. Eck performed a microdiscectomy on September 29, 2015. *Id*. On October 14, 2015, Dr. Eck indicated Mr. Mull could "lift 30 lbs." *Id*. Dr. Eck released him to return to work effective November 16, 2015 without restrictions.

On December 16, 2015, Dr. Eck responded to a Medical Questionnaire sent by counsel for Mr. Mull. (Ex. 9.) He diagnosed a right L5-S1 disc herniation. *Id*. Dr. Eck responded "yes" when asked, "did the lifting incident on January 24, 2015 more likely than not contribute more than 50% in causing Mr. Mull's injury, considering all causes." *Id*. He opined that Mr. Mull's back injuries arose primarily out of and in the course and scope of his employment with Henkels & McCoy. *Id*. He further opined that all of his treatment "was caused by the lifting incident that occurred on January 24, 2015" and medically necessary. *Id*.

In Mr. Mull's Sworn Statement, he addressed the references in the medical records to the onset of his symptoms occurring in March 2015. (Ex. 2 at 44:12-25; 45:1-22.) Mr. Mull testified that his right thigh and right lower leg symptoms began in March although his back injury occurred on January 24, 2015. *Id*.

On August 25, 2015, Mr. Mull filed a Petition for Benefit Determination seeking medical and temporary disability benefits. (T.R. 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on September 30, 2015. (T.R. 2.) On December 23, 2015, Mr. Mull filed a Request for Expedited Hearing based upon a review of the file. (T.R. 5.) On

4

January 12, 2016, Henkels & McCoy filed its response to the Expedited Hearing. (T.R. 8.)

Mr. Mull asked the Court to order medical benefits and temporary disability benefits. Specifically, Mr. Mull requests that Henkels & McCoy pay for medical treatment that he sought on his own following the denial of his claim on September 3, 2015. Mr. Mull also requests temporary disability benefits from September 18, 2015, through November 16, 2015.

Henkels & McCoy asked the Court to deny Mr. Mull's claim upon the basis of notice and lack of medical proof demonstrating he sustained a work-related back injury on January 24, 2015. The parties stipulate that Henkels & McCoy paid Mr. Mull's full salary until September 2, 2015. Henkels & McCoy did not file a Wage Statement with the Court.[6]

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

---

[6] Counsel for Mr. Mull asserts that he is entitled to $6,291.44 from September 18, 2015, through November 16, 2015. That equates to a weekly compensation rate of approximately $731.56. (T.R. 9.) Defense counsel asserts that Mr. Mull's correct weekly compensation rate is $737.90. (T.R. 8.) Since Henkels & McCoy is in the best position to know Mr. Mull's wage information, the Court will rely upon the weekly compensation rate it provided.

### *Mr. Mull is Likely to Succeed on the Merits at Trial*

In the present matter, the first issue is whether Mr. Mull provided legally sufficient notice of a work injury his employer. Mr. Mull testified he worked at various TVA sites through his employment with Henkels & McCoy. (Ex. 2 at 39:12-24.) With the exception of a co-worker, the rest of his crew, including supervisors, consisted of TVA employees. Mr. Mull's unrebutted testimony was that he gave actual notice at the time of the incident to his foremen, Ken Cox and Teddy Holland. It was also Mr. Mull's unrebutted testimony that he called his foreman on January 28, 2015, because he "couldn't move." He testified his foreman sent him to Watts Bar Nuclear Plant to see the plant nurse, and Mr. Mull complied with this instruction. Mr. Mull told the TVA nurse how he was injured. That testimony was also unrebutted. On July 16, 2015, a TVA supervisor terminated Mr. Mull and released him back to Henkels & McCoy.

Tennessee Code Annotated section 50-6-201(a)(1) (2015) provides that an injured employee "shall, immediately upon the occurrence of an injury, or as soon thereafter as practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury . . . within thirty (30) days after the occurrence of the accident." When an employer raises lack of notice as a defense, the burden is on the employee to show that he/she gave notice, the employer had actual notice, or the failure to give notice was reasonable under the circumstances. Tenn. Code Ann. § 50-6-201(a)(1) (2015); *Jones v. Sterling Last Corp.*, 962 S.W.2d 469, 472 (Tenn. 1998).

In *Bogus v. Manpower Temporary Services*, 823 S.W.2d 544, 547 (Tenn. 1992), a case regarding co-employers, the Court found that TVA, the special employer, and Manpower, the general employer, were co-employers, and held that TVA's immediate supervisor over the injured Manpower employee "was the representative of Manpower for the purpose of workers' compensation notice of injury." Likewise, in the present case, it appears that TVA was the special employer and Henkels & McCoy was the general employer over Mr. Mull. In other words, TVA and Henkels & McCoy were co-employers. Based upon Mr. Mull's unrebutted testimony of providing actual notice of his injury at the time of the incident, the Court finds that Henkels & McCoy had notice of his injury, when Mr. Mull gave notice to his foremen at the time of the incident. Accordingly, as to the notice defense, the Court finds that Mr. Mull demonstrated he is likely prevail on the notice issue at a hearing on the merits.

The Court next turns to Henkels & McCoy's contention that the medical proof failed to demonstrate that Mr. Mull sustained a work-related back injury on January 24, 2015. Specifically, Henkels & McCoy pointed to the histories given by Mr. Mull to East Town Urgent Care, Physicians Care, and Dr. Eck indicating that his right lower extremity pain and weakness began in March 2015. (T.R. 8.) It argued that, if an injury occurred at all, then it occurred in March 2015, and therefore Mr. Mull is not entitled to workers' compensation benefits for an alleged January 24, 2015 back injury.

6

Under the Workers' Compensation Law, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2015). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2015). Further, "[a]n injury causes . . . the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(C) (2015).

At the June 19, 2015 visit with Dr. Eck, Mr. Mull described lifting "a 75 lb. cable roll and had immediate pain which has gotten worse." On June 29, 2015, Dr. Adams at UT Family Medical Center performed a fitness-for-duty examination of Mr. Mull for TVA. Dr. Adams documented the history given by Mr. Mull of picking up a coil of cable while in a bucket injuring his low back in January 2015. Additionally, Dr. Eck specifically opined that the lifting incident on January 24, 2015, more likely than not contributed more than fifty percent in causing the right L5-S1 disc herniation. He opined that the right L5-S1 disc herniation arose primarily out of and in the course and scope of his employment with Henkels & McCoy. Dr. Eck also opined Mr. Mull's lifting incident on January 24, 2015, necessitated the medical treatment he provided. Accordingly, the Court finds that Mr. Mull satisfied the statutory requirements for a compensable injury as set forth in Tennessee Code Annotated sections 50-6-102(13)(A) and 50-6-102(13)(B)-(13)(C) (2015).

The Court must next determine whether Henkels & McCoy is liable for Mr. Mull's medical expenses. In *McCord,* 2015 TN Wrk. Comp. App. Bd. LEXIS at *13, the Workers' Compensation Appeals Board stated, "an employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice and/or that it may be subject to penalties for failure to provide a panel of physicians and/or benefits in a timely manner." The Appeals Board also stated, "[Tennessee Code Annotated section 50-6-204(a)(1)(A) and Bureau rules] contemplate that an employer has an initial period of time following receipt of notice of a work accident, not to exceed fifteen days, within which it must investigate a claim and make a preliminary decision on compensability." *Id.* at *10. The Court finds that Henkels & McCoy had notice of Mr. Mull's injury on January 24, 2015, but it did not offer a panel to Mr. Mull until on or about August 3, 2015. Henkels & McCoy did not demonstrate that it authorized and scheduled Mr. Mull to see the physician selected from the belated panel. In light of these circumstances, the Court grants Mr. Mull's request that Henkels & McCoy pay for the medical expenses he incurred after September 3, 2015.

Finally, the Court will address Mr. Mull's request for temporary disability benefits from September 18, 2015, through November 16, 2015. To be entitled to temporary total disability benefits, an injured employee "must prove that he [or she] was (1) totally disabled to work by a compensable injury; (2) that there is a causal connection between the injury and his [or her] inability to work; and (3) the duration of that period of disability." *James v. Landair Transport, Inc.,* No. 2015-02-0024, 2015 TN Wrk. Comp. App. Bd. LEXIS 28, at *16 (Tenn. Workers' Comp. App. Bd. Aug. 26, 2015) (quoting *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978)). As the name implies, an injured worker is entitled to temporary partial disability benefits, a category of vocational disability distinct from temporary total disability, when the temporary disability is not total. *See* Tenn. Code Ann. § 50-6-207(1)-(2) (2014). Specifically, while temporary total disability refers to the employee's condition while completely unable to work because of the injury until the worker recovers as far as the nature of the injury permits, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005).

Dr. Eck took Mr. Mull completely off work during the period of September 18, 2015, through October 13, 2015. On September 29, 2015, Dr. Eck performed a microdiscectomy. From October 14, 2015, through November 16, 2015, Dr. Eck placed Mr. Mull on restricted duty. Henkels & McCoy did not have work for him during that time.

Based upon Dr. Eck's medical records and Medical Questionnaire responses, this Court finds that Mr. Mull is entitled to temporary total disability benefits from September 18, 2015, through October 13, 2015. This Court further finds Mr. Mull is entitled to temporary partial disability benefits from October 14, 2015, through November 16, 2015.

**IT IS, THEREFORE, ORDERED** as follows:

1. Henkels & McCoy or its workers' compensation carrier shall authorize Mr. Mull to continue treating with Dr. Eck pursuant to Tennessee Code Annotated section 50-6-204 (2015) for treatment of January 24, 2015 work injury. Mr. Mull or the providers shall furnish Henkels & McCoy, or its carrier, bills for the charges incurred for compensable care, and Henkels & McCoy or its carrier shall timely pay said charges in accordance with Tennessee Code Annotated section 50-6-204 (2015).

2. Upon presentment of bills by Mr. Mull or his treating providers, Henkels & McCoy or its carrier shall timely pay the charges for past treatment of Mr. Mull's

8

work injury by, or upon the prescription of, Dr. Eck from September 3, 2015, forward.

3. The amount of temporary disability benefit is $737.90 per week.

4. Payment of past due temporary disability benefits in the amount of $6,324.86 shall be made for the period from September 18, 2015, to November 16, 2015.

5. This matter is set for an Initial Hearing on April 12, 2016, at 2:30 p.m. Eastern Time.

6. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

7. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

IT IS SO ORDERED.

**ENTERED this the 18th day of February, 2016.**

_Audrey Headrick_
**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set on April 12, 2016, at 2:30 p.m. Eastern Time, with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without**

**your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within

five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavit of Benjamin Heath Mull
2. Sworn Statement of Benjamin Heath Mull
3. Medical records of East Town Urgent Care & Occupational Health
4. Medical records of Physicians Care
5. Medical records of Jason Eck, D.O.
6. Medical records of UT Family Practice
7. Medical records of Jay E. Jolley, II, M.D.
8. Panel
9. Medical questionnaire completed by Dr. Eck

Technical record:
1. Petition for Benefit Determination, filed August 25, 2015
2. Dispute Certification Notice, filed September 30, 2015
3. Motion for Additional Time, filed November 30, 2015
4. Agreed Order Extending Time, filed December 11, 2015
5. Request for Expedited Hearing, filed December 23, 2015
6. Motion for Additional Time, filed January 4, 2016
7. Agreed Order Granting Additional Time to Employer and Insurer, filed January 5, 2016
8. Response of Employer and Insurer to Request for Benefit Determination and Request for Expedited Hearing, filed January 12, 2016
9. Employee's Memorandum in Support of Employee's Petition for Medical and Temporary Disability Benefits, filed January 14, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical and Temporary Disability Benefits was sent to the following recipients by the following methods of service on this the 18th day of February, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Josh Ward, Esq., Employee's Attorney | | | X | josh@masseyattorneys.com |
| Rick Evans, Esq., Employer's Attorney | | | X | frevans@evanslawyers.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

13